## HUNT v. GRAY.

1.  **Contract:** CONSTRUCTION : PAROL TO EXPLAIN WRITING. Where there is no ambiguity in the language of a written contract, there can be no resort to parol evidence to ascertain the meaning of the parties, or the sense in which the words of the agreement were intended, but they must be construed according to the context and the usage of the language. Accordingly, where a promissory note by its conditions became due and payable when the payee, who had conveyed land to which he had a tax title only, should procure a conveyance to himself or his grantee of the patent title, *or* at the time of the perfection of the title of said land in the payee or his grantee, *held* that parol evidence could not be admitted to show that the parties intended by the agreement to express the thought that the note should become payable only upon procuring the patent title to the land.

2.  ———— : REFORMATION : DEGREE OF EVIDENCE NECESSARY. When a party undertakes to show by parol that a written agreement fails, owing to some mutual mistake, to express the true contract, the fact of the mistake must be established by proof of the most satisfactory kind. (See cases cited in opinion.)

3.  **Tax Sale and Deed :** DELINQUENT TAXES NOT BROUGHT FORWARD : VALIDITY. Before the enactment of section 845 of the Code, a sale of land for delinquent taxes not brought forward · upon the treasurer's tax-list was valid, at least as against the owner. The enactment of that section changed the rule.

4.  **Real Estate:** PERFECT TITLE : WHAT CONSTITUTES : TAX DEED : STATUTE OF LIMITATIONS. An agreement to procure a perfect title to land is performed when a tax title regular on its face, and in the proceedings under which it was executed, has been procured ; especially where, in addition to this, such a period of time has elapsed since its execution as that the former owner is barred by the special statute of all right to question it, and where, also, the parties have been in possession under it for such a length of time that, under the general statute of limitations, no action could be maintained for the recovery of the property. The mere possibility that the owner was under such disability as would bring the case within one of the exceptions of the statute, and entitle him to redeem, is too remote, in the absence of any proof thereof, to be considered.

*Appeal from Audubon District Court.*—HON. A. B. THORNELL, Judge.

FILED, DECEMBER 20, 1888.

PLAINTIFF brought an action on a written contract, of which the following is a copy: "$1,000. June 1, 1881. For value received, I hereby agree to pay to Mortimer Hunt, or order, the sum of one thousand dollars, with interest at eight per cent. per annum from the date of this note. Said note is payable at the Audubon County Bank, of Audubon, Iowa, and shall become due and payable at the time of procuring a conveyance of the interest of the patent-title owner of the southeast quarter of section twenty-five, township eighty-two, range thirty-six, in favor of said Hunt or his grantees, or at the time of the perfection of the title to said land in said Hunt or his grantees. [Signed] GEORGE GRAY." And he alleged in his petition that at the time of the execution of the contract the title to said land was perfect in him, and that at the same time, and as part of the same transaction, he executed and delivered to William Leet a conveyance thereof, sufficient in law to vest the title in him. Also that he and said William Leet had been in actual, open and adverse possession of the land for more than ten years, and that the money stipulated to be paid was therefore due and payable by the terms of the contract. He also set out the several conveyances constituting the chain of title, which show that he held under a treasurer's deed, executed in pursuance of a sale of the land for taxes alleged to be due thereon. He also pleaded a judgment recovered by his grantor against a former owner, quieting the title in him. Defendant admitted the execution of the instrument sued on, but denied that it was due or payable. He also alleged that the real agreement between the parties was that the money was to become payable only on condition that plaintiff should procure from the holder of the patent title to the land a relinquishment of all claim to and interest therein, which had never been done. Also that, if the last clause of the writing expressed any other or different agreement than that, it failed to embody the real undertakings of the parties, and was inserted in the instrument by their mutual mistake, or the mistake of the

scrivener who drew it ; and he prayed for the reformation of the writing. He also alleged that the tax deed under which the plaintiff claimed was void, and that the court rendering the judgment quieting the title in plaintiff's grantor did not have jurisdiction of either the subject-matter or the parties. The cause was tried as an equity action, and the judgment was for plaintiff. Defendant appeals.

*H. G. Curtis, John M. Griggs* and *Theodore F. Myres,* for appellant.

*George W. Paine,* for appellee.

REED, J.—The land described in the contract was entered by James Wisehart, in 1859, and a patent was issued to him in the following year. The treasurer's deed was executed in February, 1871, under a sale on the first Monday of November, 1867, for taxes alleged to be due for 1861, 1865, and 1866, Charles Brennecke being the grantee. He subsequently conveyed the land to W. L. Culbertson, who, on the first of April, 1876, conveyed it to plaintiff. In 1875 Culbertson instituted a suit in the circuit court of the county against Wisehart, praying that the title be quieted in him ; and in September of that year a judgment was entered in accordance with the prayer of his petition, the original notice being served by publication. In March or April, 1881, defendant, as agent for William Leet, entered into negotiations with plaintiff for the purchase of a farm of 480 acres, which included the tract in question. He knew at the time that plaintiff held this tract under a treasurer's deed, and he claimed that he was instructed by his principal not to purchase any lands the title to which was in any manner doubtful. The negotiation resulted in a contract for the purchase of the farm, the price agreed upon being seven thousand dollars. Defendant received that amount of money from Leet, but, being apprehensive that the latter would hold him responsible for damages in case the title to the tract in question

should prove defective, he desired to retain in his own hands a portion of the price until the question with reference to the title should be adjusted. The parties therefore agreed. that he should retain one thousand dollars of the amount. He accordingly paid over to plaintiff six thousand dollars, and the latter executed to Leet a conveyance of the farm, and they entered into the contract in suit with reference to the payment of the. balance. Plaintiff took possession of the land in June, 1876, under his purchase from Culbertson, and continued in possession up to the time of the sale, since which time Leet has been in possession.

I. If the writing expresses the agreement of the parties, there can be no question, we think, but that the money is now due and payable, if, as matter of fact, the title to the land is now perfect in Leet. By its terms there were two conditions, upon the happening of either of which the obligation to pay would become absolute, viz.: (1) Upon the procuring of a conveyance from the holder of the patent title of his interest; and (2) upon the perfecting of the title' to the land in plaintiff or his grantee. This is the clear meaning of the language of the contract. There is no ambiguity in the writing, and there can be no resort to parol evidence to ascertain the meaning of the parties, or the sense in which the words of the agreement were intended, but they. must be construed according to the context and the usage of the language. Broom, Leg. Max. [2 Ed.] 408. There is nothing either in the context or in the intention of the parties, as shown upon the face of the instrument, indicating that the words were not used in their ordinary sense.

II. Is defendant entitled to a reformation of the instrument? He testified positively that the agreement was that the one thousand dollars should become due and payable only when plaintiff had obtained a conveyance from the holder of the patent title, and that no other condition was

1. CONTRACT: construction: parol to explain writing.

2. ——: reformation: degree of evidence necessary.

spoken of during the negotiation, and that he under-stood, when he signed the writing, that it truly expressed that agreement. But in that respect he is contradicted by the scrivener who drew the instrument, who testified that it was understood and talked over by the parties that it might be impossible to procure a conveyance from Wisehart, whose whereabouts were unknown, and that the last clause of the contract was inserted in view of that fact. Plaintiff also testified that the writing embodied the contract actually agreed upon. In addition to this, it is shown that when the parties first agreed upon the terms of a sale they reduced their contract to writing. That instrument appears to have been signed several weeks before the one in suit, and it contains the same provisions.

It is well settled that when a party undertakes to show by parol that a written agreement fails, owing to some mutual mistake, to express the true contract, the fact of the mistake must be established by proof of the most satisfactory character. *Gelpcke v. Blake*, 15 Iowa, 387 ; *McTucker v. Taggart*, 29 Iowa, 478 ; *Hervey v. Savery*, 48 Iowa, 313 ; *Wachendorf v. Lancaster*, 61 Iowa, 509. It is apparent from the statement of the evidence that the present case is not brought within that rule.

III. The treasurer's deed to Brennecke is regular on its face. The sale appears to have been made on the first Monday in November, 1867, the day

3. TAX sale and deed: delinquent taxes not brought forward: validity.

upon which, under the statute then in force, the clerk of the board of supervisors was required to deliver to the treasurer the tax-list for that year. It appears that the treasurer did not, before making the sale, bring forward onto the tax-list for 1867 the delinquent taxes against the land for the preceding years ; and it was contended that for that reason the sale was unauthorized, and the deed is void. At that time section 750, Revision of 1860, was in force. It required the treasurer, on receiving the tax-book for each year, to enter upon the same opposite each parcel of real property on which any tax

remained unpaid for any preceding year the amount of such tax, and the year for which the same was due. But it contained no provision, as does the corresponding section of the Code (sec. 845), that the failure of the treasurer to comply with the requirement should invalidate any sale of the property made in whole or in part for such tax. It was held by this court in *Cummings v. Easton*, 46 Iowa, 183, and *Jiska v. Ringgold County*, 57 Iowa, 630, that upon such failure by the treasurer a subsequent purchaser or incumbrancer of the land took it discharged of the lien of the tax. Those cases, however, do not determine the question here involved, which is whether such failure will invalidate the sale when there are no intervening rights of third parties, but the owner of the property is the only one affected by it. And, when all of the provisions of the statute then in force are considered, it is perfectly clear, we think, that no such result would follow. By Revision, section 759, taxes on real property were made a perpetual lien thereon against all persons except the state and the United States. Now, while the holding that one who deals with reference to the property without actual notice of the tax, or that opportunity to acquire information with reference to it which the record would have afforded if the treasurer had performed the duty required of him, is just, no such consideration applies to the owner. He is not relieved of the duty to pay the tax by the neglect of the treasurer to bring it forward upon the lists for subsequent years, and, as against him, by the express provision of that section, the lien is perpetual; and by the provisions of section 784, subd. 7, he was precluded from asserting the fact of the neglect of the officer in resistance of the deed, for by that provision the deed was made conclusive as to all such questions. By section 763 it was made the duty of the treasurer on the first Monday in October in each year to offer for sale all tracts or parcels of real estate on which any taxes for preceding years remained delinquent. As

against the owner of the property, the duty thus imposed upon the treasurer was imperative. It was in no manner dependent on whether the delinquent taxes had been entered upon the lists for subsequent years or not. By the amendment of 1873 the rule in this respect was changed, and under the statute as it now stands there can be no valid sale of real estate for delinquent taxes which have not been brought forward on the tax-lists. But that amendment did not affect sales made under the previous statute, or deeds executed in pursuance of them. It was the enactment of a new rule on the subject, and not a mere legislative declaration as to the force and effect of the former statute, as was contended by counsel.

Upon the face of the deed, and the proceedings under which it was executed, then, the title appears to

4. REAL ESTATE: perfect title: what constitutes: tax deed: statute of limitations.

be perfect. In addition to that is the fact that such period of time has elapsed since its execution as that the former owner is barred by the statute of all right to question it. The deed also affords a color of title, however irregular the proceedings under which it was executed may have been; and the parties have been in possession under it for such length of time that, under the general statute of limitations, no action could be maintained for the recovery of the property. True, there is a possibility that the owner was under such disability as would bring the case within one of the exceptions of the statute; but there is no proof of that fact, and its existence cannot be presumed. The deed is *prima-facie* evidence of title in the grantee, and when plaintiff introduced it, and the conveyances from the intermediate grantors to himself, his case was established, and the burden of proving such facts as would defeat it was upon defendant, and he has proven no such fact. We think, therefore, that the district court rightly held that the obligation was fully matured; and in reaching that conclusion we have not found it necessary to consider any question relating to the judgment quieting the title in Culbertson.             AFFIRMED.