WILLIAM RENSINK, *et al.*, Appellants, v. MARIA WIGGERS, *et al.*

**Reformation:** DEGREE OF PROOF. In order to reform a written instrument for fraud or mistake, there must be shown such a degree of proof as will produce, in an unprejudiced mind, the belief and conviction of the truth of the fact asserted, taking into consideration all the surrounding facts and circumstances.

BURDEN OF PROOF. One seeking the reformation of an ante-nuptial contract on the ground that it did not express the real intent of the parties, has the burden of proving such facts.

EVIDENCE INSUFFICIENT. In an action in which one of the defendants asked the reformation of an ante-nuptial contract with her former husband, on the ground of false and fraudulent statements as to its contents, she averred that she could not read it, and that it was not read over to her. The person who drew it, and another who was present, testified that it was read to her in English, and explained to her in the Holland language, which she understood. Her brother testified that it was read to her in English, but was not explained in Holland. Defendant denied that it was explained to her before she signed it, but afterwards admitted that it was read to her in the German or Holland language, and that she could understand the person who explained its contents, though she insisted that the explanation was fraudulent. *Held*, that the evidence did not justify a decree reforming the contract.

*Appeal from Muscatine District Court.*—HON. W. F. BRANNAN, Judge.

SATURDAY, OCTOBER 10, 1896.

ON August 21, 1891, C. Rensink and the defendant Maria Wiggers (then Maria Pilgrim), entered into an ante-nuptial contract, in writing, by the terms of which

the said Maria, on the death of said Rensink, was to have a life estate in lot 9, in block 79, in the city of Muscatine, and another lot in said city so long as she remained unmarried, which provision said Maria accepted in lieu of dower, and agreed to make no other claim of any kind against him or his estate after his death. Soon after, Maria and said Rensink married, and lived together as husband and wife until in June, 1892, when Rensink died. Rensink made a will, in which he refers to this ante-nuptial contract as stating his wife's interest in his estate, and provides that she should have no other or greater interest therein. The will was probated, and the settlement of the estate proceeded with. The widow filed a claim against the estate for moneys advanced to her husband, the greater part of which was allowed after a hearing. She entered into possession of the property which she became entitled to under this ante-nuptial contract, and occupied the premises now in controversy, as a dwelling house, and collected the rents from the other property, until in June, 1894, when she married her co-defendant, John B. Wiggers. Thereupon plaintiffs, the heirs of said Rensink, deceased, instituted this action to recover possession of said property. Defendants filed an answer and cross-petition, averring that defendant Maria was induced to sign said ante-nuptial contract by reason of false and fraudulent statements as to its contents; that it did not express the real contract of the parties, which was that she should, in any event, after the death of Rensink, she surviving him, have an estate for life in said property. She averred that she could not read said contract, and that it was never read over to her. She prayed that it might be reformed so as to express the real intent of the parties. The district court so reformed the contract as to give the said Maria a life estate in lot 3, aforesaid, except a strip on

the east side thereof.    From this decree the plaintiffs appeal.—*Reversed.*

*Jayne & Hoffman* for appellants.

*Thomas Brown* and *C. M. Brown* for appellees.

KINNE, J.—We have recently had occasion to determine the character of evidence which will justify a court in reforming an instrument for fraud or mistake.    *West v. West,* 90 Iowa, 44 (57. N. W. Rep. 639).    In that case the question was fully discussed, and it was held that, to reform a written instrument for fraud or mistake, there must be "that measure or degree of proof which produces in the unprejudiced mind the belief and conviction of the truth of the fact asserted, having in view all the facts and circumstances surrounding the transaction.    A fact thus established may be said to have been proven by testimony which is clear and satisfactory."    See, also, *Murphy v. Bank,* 95 Iowa, 325 (63 N. W. Rep. 702); *Breja v. Pryne,* 94 Iowa, 755 (64 N. W. Rep. 669); *Jurgenson v. Carlsen,* 97 Iowa, 627 (66 N. W. Rep. 877). With this rule in mind, we are to determine whether the case made, justified the decree of this district court.    We shall not undertake to review the evidence in detail.    Much of the testimony of the defendant Maria, was properly objected to as incompetent, under the statute, and we cannot consider it.    It appears from the testimony of the scrivener who drew the contract, and from that of another witness who was present, that the instrument was read over to the defendant in English, and explained to her in the Holland language, which she well understood. The brother of the defendant swears that the contract was read over in English, but was not read or explained in the Holland language.    His testimony is very

unsatisfactory, and many of his answers are evasive. The defendant Maria, is not consistent in her answers. She denies that the contract was explained to her before she signed it, and afterward admits that it was read to her in the German or Holland language. She admits that she could understand the person who explained its contents, but insists, that the explanation was not in accordance with the terms of the contract as it was, in fact, written. The burden was on the defendant to show, that the contract did not, in fact, correctly embody her agreement with her late husband. If we consider, as we must, only the competent testimony, she has failed to establish a case for reformation. The testimony, to show the alleged fraud, is neither clear nor satisfactory. In fact, a thorough study of the evidence induces the conviction that there was no fraud practiced. Again, this defendant had this contract in her possession for years. There is nothing to indicate, that after Rensink's death, and up to the time of the marriage of Maria to Wiggers, she understood the contract to be different from what it appeared on its face to be. The evidence by which it is sought to reform this instrument is, to our minds, wholly insufficient to justify a decree for the defendants. It is conceded, that she signed the contract, and, as we find no fraud, she must abide by its terms, however inequitable they may be. The decree of the district court is REVERSED.